IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DONALD PATTON**                                                                                      **PLAINTIFF**

**v.**                                                             **CAUSE NO. 1:15CV355-LG-RHW**

**J & K LOGGING, LLC**                                                  **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT is the [73] Motion for Summary Judgment filed by Defendant J & K Logging, LLC, the only remaining Defendant in this action. The Motion has been fully briefed. Having carefully considered the Motion, the submissions of the parties, and the relevant law, the Court will grant summary judgment to J & K on all claims stated against it.

**BACKGROUND**

This diversity action arises out of a Timber Contract between Plaintiff Donald Patton and Defendant J & K Logging, LLC. Patton alleged in his Complaint and testified in his deposition that Kevin Mizell, an employee of International Paper Company,[1] estimated the value of the timber on Patton's property at $200,000. Patton testified that Mizell recommended J & K to him to remove the timber.

Patton further testified that about a year later, he spoke to Steven King, J & K's owner, about the timber, and that King "thought there'd be 200,000 – at least

---

[1] Patton also sued International Paper, but the Court has since dismissed that Defendant from this action.

$200,000 worth of timber on the place." (Patton dep. 38:14-39:5, ECF No. 75). Thereafter, in August 2013, Patton signed the subject contract with J & K for the removal of the timber.

The Timber Contract provided in pertinent part that Patton would be paid $14.00/ton for pine pulpwood, $33.00/ton for pine logs, $46.00/ton for pine poles, $22.00/ton for small logs, and $17.00/ton for pine chip-n-saw. After removing the timber, J & K sold the majority of the timber to International Paper at its mill in Bogalusa, Louisiana, and thereafter paid Patton approximately $100,000 pursuant to the Timber Contract.[2]

Patton alleges that "[w]hen the last of the timber was cut and [he] received his last payment on or about September 20, 2013, [he] realized that he had been paid less than half the estimated value of his timber." (Compl. 2-3, ECF No. 1-2). He contends that Defendant J & K deprived him "of the full value of the timber removed from his property." (*Id.* at 3). Specifically, he argues that he was primarily paid for pulpwood, but should have been paid for logs or poles.

Patton has brought claims against J & K under Mississippi state law for (1) timber trespass; (2) breach of contract;[3] (3) conversion; (4) conspiracy to defraud; (5)

---

[2] The evidence shows that Patton entered into subsequent contracts with J & K and received additional amounts, but those contracts are not the subject of the dispute here.

[3] While Patton includes a separate claim for "specific performance," "[s]pecific performance has traditionally been regarded as a remedy for breach of contract that is not a matter of right but of sound judicial discretion." *Rotenberry v. Hooker*, 864 So. 2d 266, 280 (Miss. 2003).

negligence; (6) gross negligence; (7) bad faith; and (8) breach of fiduciary duty. The Court previously dismissed Patton's timber trespass claim. J & K has now moved for summary judgment on the remaining claims stated against it.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(a), a summary judgment motion shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the motion, the Court views the evidence in the light most favorable to the non-movant. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). If the movant carries its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

The non-movant's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and quotation marks omitted); *see also Sanches v. Carrollton Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment."). He "must come forward with specific facts showing that there is a genuine issue for trial." *Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1998).

3

While the Court is obligated to resolve factual controversies in favor of the non-moving party, it must only do so when there is an actual controversy, "that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. The Court will not, in the absence of proof, assume that the non-moving party could or would prove the necessary facts. *Id.* "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact [on summary judgment] cannot be presented in a form that would be admissible in evidence." The proponent of the objectionable evidence has the burden "to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note (2010).

Applying Rule 56, the Court is of the opinion that J & K is entitled to summary judgment on all claims stated against it. In a 3-page Response, Patton does not address many of the arguments raised by J & K, appears to have abandoned most of his claims, and makes statements that are unsupported by the evidence he cites. Even so, the Court has reviewed the evidence before it and finds that the evidence is insufficient for a jury to return a verdict in favor of Patton. *See Anderson*, 477 U.S. at 249-50.

4

**Breach of Contract**

Patton must show "(1) the existence of a valid and binding contract; (2) breach of the contract by the defendant; and (3) money damages suffered by" him. *See Guinn v. Wilkerson*, 963 So. 2d 555, 558 (Miss. Ct. App. 2006). There is no genuine dispute that the Timber Contract was valid and binding. Patton's claim is that he was not paid enough, and that this constitutes a breach. He advances two primary arguments in support of this position: (1) that he was told that his timber was worth $200,000 and (2) that he was not paid for certain timber that was cut. The Court addresses each argument in turn.

**(1) Patton's argument that he was told that his timber was worth $200,000**

Patton states that a genuine issue of material fact exists because Kevin Mizell with International Paper and Steven King with J & K told him that his timber was worth $200,000. J & K argues that the alleged statements by Mr. Mizell and Mr. King are impermissible parol evidence based on Mississippi's parol evidence rule. *See Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 F. App'x 327, 338 (5th Cir. 2014) (court sitting in diversity applies the parol evidence rule of the applicable state).

Under Mississippi's parol evidence rule, parol "evidence is admissible to explain terms where a document is incomplete[, but i]t cannot be used to contradict the terms." *Id.*; *see also, e.g.*, *Estate of Regan v. Estate of LeBlanc*, 179 So. 3d 1155, 1159 (Miss. Ct. App. 2015). "It is a well-settled principle of contract law that parol

evidence should never be admitted where the terms of a contract are clear and unambiguous." *HeartSouth, PLLC v. Boyd*, 865 So. 2d 1095, 1107 (Miss. 2003). "The right of persons to contract is fundamental to [Mississippi] jurisprudence and absent mutual mistake, fraud, and/or illegality, the courts do not have the authority to modify, add to, or subtract from the terms of a contract validly executed between two parties." *Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (Miss. 2012) (citation quotation marks, and brackets omitted) "'With limited exceptions, persons enjoy the freedom to contract. When they do, they are bound by the terms of their contracts.'" *Id.* (citation omitted).

Patton has not responded to J & K's parol evidence argument or otherwise offered any evidence of mutual mistake, fraud, and/or illegality. *See* Fed. R. Civ. P. 56 advisory committee's note (proponent of objectionable evidence must show why the evidence is admissible or can be reduced to admissible form at trial). To the extent he is trying to alter the terms of the Timber Contract to include a $200,000 purchase price, this is impermissible. Moreover, with respect to Mr. Mizell, even if his statements were admissible, they are irrelevant, as there is no genuine issue of material fact that Mr. Mizell was not an agent for J & K and could not bind J & K to any particular purchase price in any event.[4]

Even accepting that Patton was told that his timber was worth $200,000, the Timber Contract did not provide that Patton would be paid $200,000, only that he

---

[4] This same reasoning applies to any statements made by Mike Alexander, although it appears that Patton is no longer relying on any such statement(s).

would be paid certain amounts for certain kinds of timber on a "pay as cut" basis. The payment terms of the Timber Contract are not ambiguous. Accordingly, the Court will not permit parol evidence to alter them, and Patton is bound thereto. *See Epperson*, 93 So. 3d at 17. Patton's *ex post facto* disappointment with the amount he received under the Timber Contract does not amount to a breach of contract claim.

Patton is left with speculation that his timber was worth more than he was paid, which speculation is not enough to avoid summary judgment. *See, e.g.*, *Sanches*, 647 F.3d at 165. He does not dispute that no official timber valuation (commonly referred to as a "timber cruise") was performed on his land at any point. And, he has no evidence to rebut that the J & K employee responsible for sorting and grading the timber "relied upon my nearly twenty years of experience and sorted the timber in a way that provided the most profit to my employer [J & K] and, consequently, Mr. Donald Patton." (Aff. of Mike Thomas 2 (¶8), ECF No. 97). The Court finds summary judgment appropriate to the extent Patton's breach of contract claim is based on what he was told his timber was worth.

### (2) Patton's argument that he was not paid for certain timber that was cut

Patton further contends that there is a genuine dispute of material fact as to "the failure to include payment for certain load tickets. The Defendant failed to pay the Plaintiff for timber which it cut and sold." (Patton Mem. 2, ECF No. 82). Patton states that some of the Log Load Registers show that "Defendant removed

far more loads of logs and/or poles than for which he was paid." (Patton Mem. 2-3, ECF No. 82; Log Load Registers, ECF Nos. 86 and 87).

As an initial matter, Patton does not explain how the subject Log Load Registers support this argument. Regardless, the evidence before the Court shows the opposite of what Patton claims: the Log Load Registers on which Patton relies each contain Load Numbers which directly correspond to Purchase Orders indisputably showing that J & K paid Patton for what was removed. Indeed, the Court has conducted an extensive review of the Log Load Registers Patton identifies and the Purchase Orders before it, and all entries on the Registers are accounted for in the Purchase Orders. (*See* ECF No. 73-6). Similarly, the Court's review of the Purchase Orders also clearly shows that payment was made for Load Nos. 97389, 31759, and 97319, despite Patton's assertion otherwise. (*See id.* at JKL_022 (reflecting payment for 37159) and JKL_024 (reflecting payments for 97389 and 97319)). Patton's unsubstantiated assertions are not enough to meet his summary judgment burden. *See Little*, 37 F.3d at 1075.

Patton also states that the Log Load Registers do not all contain classifications as to the type of wood being loaded or where the timber was taken. While this is true, the Gate Tickets and Purchase Orders contain this information, and also reflect the payments made. Patton is again trying to create an issue of fact where none exists. Moreover, a failure to indicate where timber was taken (which is belied by the Gate Tickets in any event, which the Court has reviewed in detail) does not affect that all of the Purchase Orders include the type, quantity, and

8

agreed rate for the wood that was harvested, in accordance with the Timber Contract.

If the evidence actually supported that Patton was not paid, the Court would not hesitate to deny summary judgment. However, a review of the evidence reveals that there are simply no genuine issues for a jury to decide at trial with respect to Patton's breach of contract claim. *See Anderson*, 477 U.S. at 249-50.

**Conversion**

Conversion "requires proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or an unauthorized and injurious use, or of a wrongful detention after demand." *See Covington Cty. Bank v. Magee*, 177 So. 3d 826, 829 (Miss. 2015) (citation and quotation marks omitted). "Thus a conversion exists only when there is an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *Id.* (citation and quotation marks omitted); *see also* 90 C.J.S. *Trover and Conversion*, § 6.

The undisputed facts establish that Patton agreed for J & K to remove timber from his property and thereafter sell it. There is no allegation and no evidence, for example, that J & K removed timber not contemplated by the Timber Contract. Rather, this action involves a payment dispute that arose *after* the timber was lawfully removed, and the Court will thus grant summary judgment on this claim.[5]

---

[5] The Court finds that this claim is also precluded by Mississippi's timber trespass statute, Miss. Code § 95-5-10. *See, e.g.*, *Moorehead v. Hudson*, 888 So. 2d 459, 462 (Miss. Ct. App. 2004).

9

**Conspiracy to Defraud**

To prove conspiracy to defraud, a plaintiff must establish: "(1) a conspiracy, (2) an overt act of fraud in furtherance of the conspiracy, and (3) damages . . . as a result of the fraud." *See Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1050 (Miss. Ct. App. 2007). Patton does not address this claim in his summary judgment opposition, and he conceded this claim as to former co-defendant International Paper. His Complaint allegations that a conspiracy existed between J & K and International Paper are insufficient to overcome summary judgment. *See Abarca*, 404 F.3d at 940. The Court is of the opinion that there is no competent summary judgment evidence of a conspiracy between J & K and International Paper (or anyone else), and that summary judgment should be granted on this claim. *See, e.g.*, *Gallegos v. Mid-South Mortg. & Inv., Inc.*, 956 So. 2d 1055, 1060 (Miss. Ct. App. 2007) (discussing elements necessary to find a the existence of a conspiracy).

**Negligence, Gross Negligence, and Bad Faith**

"The elements of a prima facie case of negligence are duty, breach, causation, and damages." *Todd v. First Baptist Church of W. Point*, 993 So. 2d 827, 829 (Miss. 2008). "Duty and breach must be established first." *Id.* "Whether or not a duty exists is a question of law for the court to decide." *Enter. Leasing Co. S. Cent. v. Bardin*, 8 So. 3d 866, 871 (Miss. 2009).

Patton alleges that J & K had a duty to grade his timber as something other than pulpwood, and, thus, to pay him more pursuant to the Timber Contract. However, Patton has not addressed this element (or indeed any element) of his

10

negligence claim against J & K, and, again, he may not rely on mere Complaint allegations to overcome summary judgment.

Even so, Patton's allegations that J & K did not adequately compensate him pursuant to the Timber Contract "is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law. There must be a duty of care fixed by law and independent of the contract." *See Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015). Patton "has failed to show that [allegedly] breaching the contract was a breach of a duty of care that would expose [J & K] to tort liability under a negligence theory." *See id.* at 392.

Because Patton cannot prove negligence, his gross negligence claim and bad faith claims are not cognizable. *See, e.g.*, *White v. Nelson*, 196 So. 3d 1039, 1049 (Miss. Ct. App. 2016); *Enters., Inc. v. Newton Cty.*, 940 So. 2d 937, 943 (Miss. Ct. App. 2006) (defining bad faith to include "refusal to fulfill a duty"). In addition, there is simply no evidence – beyond Patton's mere speculation – of any bad faith on the part of J & K. *See, e.g.*, *Sanches*, 647 F.3d at 165.

**Breach of Fiduciary Duty**

Like negligence, a breach of fiduciary duty claim requires a plaintiff to prove the existence of duty. *See Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 758 (Miss. 2004). Mississippi courts "do not ordinarily impose fiduciary duties upon contracting parties." *See Dominquez v. Palmer*, 970 So. 2d 737, 742 (Miss. Ct. App. 2007).

11

Patton cites no law, and the Court has not located any, that would establish that J & K somehow owed Patton a fiduciary duty.  Instead, the Court's review of Mississippi law shows just the opposite: that in arms-length business transactions, such as is at issue here, a fiduciary duty rarely arises.  *See, e.g.*, *id.*; *see also Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 995-96 (Miss. 2006).  J & K has shown an absence of a genuine issue of material fact on this issue, and Patton has offered no evidence that would tend to show that a fiduciary relationship existed between he and J & K.

## CONCLUSION

Patton's ultimate unhappiness with the contract does not amount to an actionable claim in federal court based on the applicable Mississippi state law.  Defendant J & K has carried its summary judgment burden of demonstrating the absence of genuine issues of material fact, and Patton has failed to show that summary judgment should not be granted.  *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323-25.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [73] Motion for Summary Judgment filed by Defendant J & K Logging, LLC is **GRANTED**.  A separate judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 16th day of November, 2016.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE